**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

INTERVARSITY CHRISTIAN FELLOWSHIP/USA
and INTERVARSITY CHRISTIAN FELLOWSHIP
WAYNE STATE UNIVERSITY CHAPTER,

      Plaintiffs,

v.                                         Case No. 19-10375

BOARD OF GOVERNORS OF WAYNE STATE
UNIVERSITY at al.,

      Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS, DENYING WITHOUT PREJUDICE
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DIRECTING
THE PARTIES TO SUBMIT A PROPOSED CASE MANAGEMENT PLAN**

In 2017, Wayne State University denied the application presented by Plaintiff

InterVarsity Christian Fellowship (also "Christian Fellowship" or "InterVarsity") to be

recognized as a student organization on campus, reasoning that the requirement that

the leaders of the Christian Fellowship actually be Christians violated the University's

nondiscrimination policy. InterVarsity filed a 20-count complaint alleging that Wayne

State violated its First Amendment rights to free speech and free exercise of religion.

Wayne State moves to dismiss the complaint in its entirety for failure to state a claim.

(ECF No. 6.) InterVarsity moves for partial summary judgment. (ECF No. 7.) Both

motions are fully briefed, and the court held a hearing on July 10, 2019. (ECF No. 24.)

For the reasons stated below, the court will grant in part and deny in part Wayne State's

Motion to Dismiss and deny without prejudice InterVarsity's Motion for Partial Summary

Judgment. The parties will be directed to meet, confer, and propose a case management plan.

## I. BACKGROUND

InterVarsity Christian Fellowship/USA is a Christian organization whose purpose "is to establish and advance at colleges and universities witnessing communities of students and faculty who follow Jesus as Savior and Lord." (ECF No. 7, PageID.139; ECF No. 10, PageID.289.) It has chapters at colleges across the country. The Wayne State chapter has been active for over 75 years, holding weekly Bible studies, encouraging discussion on important social issues, and volunteering in the community. All students are welcome to participate and to be members of the group. (*Id.*)

The Wayne State chapter, like all InterVarsity groups, requires the students leading the group to profess Christian faith. Those applying for a leadership position are advised of the role's "serious spiritual responsibilities" and are asked to describe their "relationship with Jesus Christ," "personal devotional life," and church involvement. (*Id.*) The students chosen for leadership positions are given the title "Christian Leader" and are responsible for leading Bible studies and group prayer, among other religious duties. (ECF No. 7, PageID.139.) Before they take on a leadership role, students participate in an apprenticeship program presented by the national organization to equip them to provide spiritual leadership to their peers. (ECF No. 7-2, PageID.203; ECF No. 7-3, PageID.227–28.)

Wayne State recognizes over 400 student groups on campus. (ECF No. 7, PageID.140; ECF No. 10, PageID.287.) Recognition gives a student group the ability to reserve free meeting space on campus, appear on the Wayne State webpage, use the

school's online system to contact students and schedule events, apply for funding, and participate in student organization recruiting events. (ECF No. 7, PageID.141; ECF No. 10, PageID.288–89.) Beginning in 2017, student groups were required to apply through an online registration system to be approved as a recognized student organization. (ECF No. 7, PageID.141; ECF No. 10, PageID.287–88.) Cristina Garza, the president of the Wayne State InterVarsity chapter, submitted the group's application through this system. The application included InterVarsity's constitution and described the group's leadership requirements.

Upon submitting the online application, Ms. Garza received a message that the application had been completed and her position as president had been accepted. She later received a message from Ricardo Villarosa, the Coordinator of Student Life and Student Organization Services, stating: "Neither membership, nor officer requirements may violate the university anti-discrimination policy—please amend the officer requirements accordingly and resubmit." (ECF No. 7, PageID.142; ECF No. 10, PageID.290.) Garza did not amend the leadership requirements, and InterVarsity's application was denied. Nonetheless, InterVarsity continued to operate in its usual manner into the fall of 2017.

Garza re-submitted InterVarsity's application in September, and it was again denied. She contacted the office of the Dean of Students, and Mr. Villarosa informed her that Christian Fellowship's constitutional requirement that its leaders share the Christian faith was inconsistent with the school's non-discrimination code. Wayne State's Non-Discrimination/Affirmative Action Policy states that the "University is committed to a policy of non-discrimination and equal opportunities in all of its

3

operations, employment opportunities, educational programs, and related activities."
(ECF No. 6-1, PageID.121.) It continues: "This policy embraces all persons regardless
of race, color, sex (including gender identity), national origin, religion, age, sexual
orientation, familial status, marital status, height, weight, disability, or veteran status . . .
." (*Id.*) On October 26, Wayne State confirmed that it had derecognized InterVarsity and
cancelled all of its meeting-space reservations. InterVarsity began renting space at its
own expense to continue holding its Bible studies in the student center.

        In November, InterVarsity's national president wrote a letter to Wayne State's
president about the group being derecognized and arguing that Wayne State had
selectively enforced its non-discrimination policy against InterVarsity. Wayne State's
Vice President and General Counsel responded briefly and promised to follow up with a
more detailed response. InterVarsity sent another email requesting an immediate
solution, noting its desire to participate in an upcoming student recruitment event.
Wayne State responded that they should be able to solve the problem and "reach a
mutually amicable arrangement," but it was aware of no major recruitment events in the
next six months. InterVarsity sent an email noting that WinterFest, a group recruitment
event, was being held on January 24. InterVarsity explained that it continued to suffer
hardships as a result of being derecognized and requested provisional reinstatement
while they negotiated. Wayne State responded that it would not provisionally reinstate
InterVarsity but that the group could participate in WinterFest by reserving a vendor
table. InterVarsity paid a fee and secured a vendor space, which was located in a
different area some distance from the other student groups.

The Christian Fellowship and its Wayne State chapter filed this lawsuit on March 6, 2018 against the Board of Governors of Wayne State University, as well as each of its members, the Dean of Students, and the Coordinator of Student Life and Student Organization Services, in both their official and individual capacities.[1]

The complaint lists 20 counts, which allege violations of: the First Amendment's Religion, Speech, and Assembly Clauses, as well as the corresponding provisions under Article 1 of the Michigan Constitution; Equal Protection and Due Process under the Fourteenth Amendment; the Elliot-Larsen Civil Rights Act; and the Higher Education Act. Initially, Wayne State publicly stated that it derecognized InterVarsity because it violated the university's nondiscrimination policy; subsequently, Wayne State re-recognized InterVarsity as a student group and reimbursed it for the amounts incurred while derecognized.

## II. STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)).

---

[1]     A few other people were named as defendants but have since been dismissed.

"To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering a Rule 12(b)(6) motion, the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *United States v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 830 (6th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court does not, however, "accept as true . . . 'legal conclusions or unwarranted factual inferences.'" *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018) (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The issue to be resolved is "not whether [the plaintiff] will ultimately prevail . . . but whether his complaint [i]s sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). "A motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (citing *Nuchols v. Berrong*, 141 F. App'x 451, 453 (6th Cir. 2005); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)).

6

## III. DISCUSSION

### A.  Motion to Dismiss

Wayne State moves to dismiss the complaint in its entirety under Rule 12(b)(6) and argues that some claims additionally merit dismissal under Rule 12(b)(1). (ECF No. 6, PageID.96.) At oral argument, Wayne State grouped the counts in the complaint into three categories: (1) religion claims, (2) speech claims, and (3) miscellaneous claims. (ECF No. 24, PageID.424–25.) The court will organize its analysis similarly.

#### 1.  Religion Claims

The complaint contains ten religion-related counts. They allege violations of the First Amendment's Religion Clauses (Counts 1–2), Free Exercise Clause (Counts 3–4), and Establishment Clause (Count 5); the Equal Protection Clause (Count 10); the Elliot-Larsen Civil Rights Act (ELCRA) (Counts 12–14); and the Michigan Constitution's Freedom of Worship and Religious Belief Clause (Count 15). Each will be considered in turn.

In Count 1, InterVarsity alleges that Wayne State violated its First Amendment right to select its own religious leaders without government interference by revoking its status as a recognized student organization based on its leadership criteria. (ECF No. 1, PageID.24–25.) Wayne State argues that this count fails as a matter of law because the principal at issue—the "ministerial exception" to governmental imposition of otherwise broadly applicable legal standards or regulations—operates only as an affirmative defense and cannot be brought as a cause of action. (ECF No. 6, PageID.108.) Both cite *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012), and *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829 (6th Cir. 2015).

*Hosanna-Tabor* was an employment discrimination suit where the Supreme

Court recognized "that there is a ministerial exception grounded in the Religion Clauses

of the First Amendment," which barred a minister from challenging her church's decision

to fire her. 565 U.S. at 707, 710. The Court spent many paragraphs describing the

background and roots of the exception, which has the purpose of "protect[ing] a

religious group's right to shape its own faith and mission through its appointments." *Id.*

at 706. The holding of that case, of course, was limited to the issue before it. The Court

noted that it had never before "had occasion to consider whether this freedom of a

religious organization to select its ministers is implicated by a suit alleging discrimination

in employment." Upon doing so, it recognized the ministerial exception in that context.

The Court "express[ed] no view on whether the exception bars other types of suits,"

noting that "[t]here will be time enough to address the applicability of the exception to

other circumstances if and when they arise."

While it is not clear that InterVarsity may posit a violation of this principle as a

cause of action, it is equally unclear that it cannot. Indeed, although the Southern

District of Iowa in *Business Leaders in Christ v. University of Iowa* declined to extend

*Hosanna-Tabor*'s application when there was no internal dispute within the religious

organization with which the government could interfere (s*ee* ECF No. 16-1), insofar as

religious organizations have a clear constitutional right to choose their own ministers

without interference from the government, it is far from implausible that they may

affirmatively assert a violation of such right in a 42 U.S.C. § 1983 action. Similarly,

InterVarsity's claim based on its right to internal autonomy in religious affairs may state

a claim. The court will not dismiss the claims offered (novel though they may be) in Counts 1 and 2.

Counts 3 and 4 allege Free Exercise violations based on targeting of InterVarsity's religious beliefs and Wayne State applying its policy in a way that it is not generally applicable. Wayne State argues that its nondiscrimination policy is a neutral and generally applicable law with a rational basis. Moreover, it argues, withholding student organization recognition does not constitute a substantial burden on InterVarsity's free exercise of religion. InterVarsity argues that the policy is not generally applicable and in fact targets religious beliefs because Wayne State enforces the policy against InterVarsity for its religious leadership requirements but not against other student organizations that discriminate based on other protected categories. Wayne State admits it provides exceptions from its nondiscrimination policy for (male) fraternities, (female) sororities, and (gender-specific) sports teams. InterVarsity alleges that Wayne State also is aware of recognized student organizations that violate the policy and chooses not to enforce it against them while it invidiously enforces it against InterVarsity.

There are more than enough factual allegations to cross the basic threshold of a valid claim. If a government policy "appears neutral and generally applicable on its face, but in practice is riddled with exemptions or worse is a veiled cover for targeting a belief or faith-based practice," the policy must pass the test of strict scrutiny. *Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012). InterVarsity plausibly alleges that Wayne State targeted InterVarsity because of its religious beliefs. *Brookdale Senior Living Cmtys.,* 892 F.3d at 830. InterVarsity specifically alleges that Wayne State's policy is not applied to other

groups that do not share InterVarsity's religious beliefs. (ECF No. 1, PageID.19-22.) InterVarsity also alleges that Wayne State's actions prevent InterVarsity from effectively recruiting and sustaining a viable student group. (*Id.*, PageID.18.) These allegations at least satisfy the level of "substantial burden" under free-exercise jurisprudence. *Hamilton County Educ. Ass'n v. Hamilton County Bd. of Educ.*, 822 F.3d 831, 841 (6th Cir. 2016) (finding a substantial burden when a governmental entity "hindered [members'] association with [an organization], prevented [members] from soliciting others to join [the organization], or discouraged [an organization] from advocating on behalf of its members").

While evidence may later reveal these claims to be meritless, at this stage the court finds enough allegations that, if proven, would constitute a violation of InterVarsity's right to free exercise. *Brookdale Senior Living Cmtys.,* 892 F.3d at 830.

Count 5 alleges denominational discrimination in violation of the Establishment Clause. This too satisfies the standard of plausibility required in a motion to dismiss. *Id.* First, Wayne State argues—in a conclusory fashion—that InterVarsity has not alleged plausible discriminatory treatment. However, InterVarsity's complaint alleges that "Wayne State recognizes a church, New Life Church, as a recognized student organization, even though it chooses its leadership on religious grounds." (ECF No. 1, PageID.19.) InterVarsity further asserts that "Wayne State has not penalized other religious groups on campus for their religious beliefs and leadership selection." (ECF No. 1, PageID.29.) Although not fully fleshed out, these statements do sufficiently put Wayne State on notice of a potentially viable claim going forward. *Twombly*, 550 U.S. at 555 (Complaints are tasked with "giv[ing] the defendant fair notice of what the claim is

and the grounds upon which it rests.") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, Wayne State presents arguments that are, essentially, a final assessment of the merits of the case. It argues that its policy passes the test identified in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), an argument that begs the question, in that it assumes contested facts—e.g., that policy is applied neutrally and without discrimination.[2] While the court anticipates hearing these arguments once evidence has been produced, the court cannot legitimately decide such issues now in a motion to dismiss. *Twombly*, 550 U.S. at 556 ("Asking for plausible grounds . . . does not impose a probability requirement at the pleadings stage.").

Count 10 asserts an Equal Protection claim based on the Christian Fellowship's allegations that Wayne State interprets and applies its nondiscrimination policy in a way that singles it out for disfavored treatment because it utilizes a religious pledge. "To establish an equal-protection violation, a plaintiff must allege that the state made a distinction which 'burden[ed] a fundamental right, target[ed] a suspect class, or intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference.'" *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018) (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). Here, InterVarsity alleges discrimination on the basis of religious belief and practice, a

---

[2]    Wayne State's reliance on *Lemon* may prove to rest on an infirm foundation in a merits analysis as well. The U.S. Supreme Court has expressed strong skepticism about its continued vitality. *See American Legion v. American Humanist Ass'n*, 139 S.Ct. 2067, 2080 (2019) ("If the *Lemon* Court thought that its test would provide a framework for all future Establishment Clause decisions, its expectation has not been met. In many cases, this Court has either expressly declined to apply the test or has simply ignored it. This pattern is a testament to the *Lemon* test's shortcomings.").

fundamental right. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976); *Bowman v. United States*, 564 F.3d 765, 772 (6th Cir. 2008).

Wayne State argues, with vigor but without factual support, that InterVarsity does not "allege a single fact that would suggest anti-religious animus or discriminatory intent." (ECF. No. 6, PageID.112.) In fact, InterVarsity specifically alleges that "Wayne State is aware of [] violations of its non-discrimination policy [by other groups that do not share InterVarsity's religious beliefs], but . . . has enforced and interpreted its code in a way that discriminates against InterVarsity." (ECF No. 1, PageID.22.) InterVarsity proceeds to enumerate more than ten student groups that plausibly violate the relevant Wayne State policies but also appear to be retain their favored group status, in spite of so doing. (*Id.*, PageID.19-22.) As noted earlier, Wayne State may ultimately prove these arguments to be mistaken or otherwise meritless, but in a Rule 12 analysis, the court accepts InterVarsity's factual allegations as true. *Brookdale Senior Living Cmtys.*, 892 F.3d at 830. Thus, InterVarsity has here stated a claim upon which relief can be granted. *Id.*

In Counts 12–14, InterVarsity alleges violations of three provisions of ELCRA by the individual-capacity defendants only: Mich. Comp. Laws §§ 37.2402, 37.2701, and 37.2302. Wayne State argues that InterVarsity, as an entity, lacks standing to bring claims under ELCRA. The court looks to the language of each statutory provision. Section 302 prohibits "[d]eny[ing] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion . . . ." Mich. Comp. Laws § 37.2302. The Michigan Supreme Court has held that corporate plaintiffs do not have

standing under Section 302 because they are not "individuals." *Safiedine v. City of Ferndale*, 755 N.W.2d 659 (Mich. 2008). This interpretation precludes InterVarsity from bringing a claim under this provision. InterVarsity presents no argument to the contrary beyond directly contesting the conclusions of the *Safiedine* court. Given that this court has no power to reverse a Michigan Supreme Court precedent, Count 14 will be dismissed. *Riley v. Kennedy*, 553 U.S. 406, 425 (2008) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)) ("A State's highest court is unquestionably 'the ultimate expositor of state law.'").

Next, Count 12 alleges a violation of Section 402(a) and (e). The former prohibits an educational institution from discriminating against an individual; the latter proscribes policies of denying or limiting educational opportunities of a group or its members through a quota or otherwise. Following the reasoning of the Michigan Supreme Court in *Safiedine*, InterVarsity lacks standing under subsection (a) because it is not an "individual." Subsection (e) of Section 402, however, prohibits policies denying or limiting educational opportunities of *a group or its members*, through a quota or otherwise, because of religion. Wayne State argues that subsection (e) relates to quotas, not the type of claim raised here, while InterVarsity argues that it should be able bring claim under (e) because it is an expressive association. The court agrees with Wayne State. While the statute uses the phrase "a group or its members," it is in reference to forbidden quotas and does not plainly extend standing to associations. Count 12 will be dismissed.

Finally, Section 701 prohibits retaliating against a person for opposing a violation of ECLRA. A "person" is defined in 37.2103(g) to include an association or corporation.

InterVarsity is not precluded from bringing a claim under this provision. The court will not dismiss Count 13.

### 2. Speech Claims

The complaint contains eight speech-related claims. They allege violations of the First Amendment's Free Speech Clause (Counts 6–8) and Assembly Clause (Count 9), as well as their counterparts in the Michigan Constitution (Counts 16–19).

The Free Speech Clause claims are premised on Wayne State's policy requiring InterVarsity to accept as a Christian spiritual leader a person who does not hold or profess Christian beliefs. (ECF No. 1, PageID.30–31.) Count 6 argues that such a requirement infringes upon the group's right of expressive association by forcing InterVarsity Wayne State to associate with leaders who do not share its beliefs and to promote a message with which it disagrees, all of which would jeopardize its association with InterVarsity/USA. (*Id.*) Count 7 alleges that the forced inclusion of leaders who do not share with InterVarsity a Christian faith compels the group to communicate a message with which it disagrees. (*Id.*) Count 8 claims viewpoint discrimination, alleging that Wayne State discriminatorily applies its policy to InterVarsity to penalize it because of its religious opinions and perspectives. (*Id.*, PageID.32.)

Wayne State argues that all of these claims are governed by, and fail under, *Christian Legal Society v. Martinez*, 561 U.S. 661 (2010). *Martinez* analyzed a public university's recognized student organization program as a limited public forum. Within this framework, a public university may place restrictions on its student organization program so long as, in light of the purpose of the forum, the restrictions are reasonable and viewpoint neutral. *Id.* at 679 (citing *Rosenberger v. Rector and Visitors of Univ. of*

*Va.*, 515 U.S. 819, 829 (1995)). The university in that case interpreted its nondiscrimination policy as it related to its recognized student organization program as mandating the acceptance of all comers: "School approved groups must 'allow any student to participate, become a member, or seek leadership positions in the organization, regardless of [her] status or beliefs.'" *Id.* at 671. The Court held that this was "a reasonable, viewpoint-neutral condition on access to the student-organization forum." *Id.* at 669.

InterVarsity argues that *Martinez* is not applicable here because the Court explicitly limited that opinion to "consider[ing] only whether conditioning access to a student-organization forum on compliance with an all-comers policy violates the Constitution," *Id.* at 678. The policy here is not an "all-comers" policy, as Wayne State admits, but argues that "t[his factual distinction makes no legal difference." (ECF No. 9, PageID.272.)

The court disagrees. A "preliminary issue" in *Martinez* was whether the nondiscrimination policy was to be analyzed as an all-comers policy or not. *Martinez*, 561 U.S. at 675. Although the written policy prohibited discrimination on several enumerated bases, the parties had jointly stipulated that the school "require[d] that registered student organizations allow *any* student to participate, become a member, or seek leadership positions in the organization, regardless of [her] status or beliefs." *Id.* Consequently, the lower courts had "trained their attention on the constitutionality of the all-comers requirement," and the opinion's analysis is limited accordingly. *Id.* at 678. The Court expressly limited its holding to an all-comers policy and based its analysis on

15

this "factual distinction." *Martinez* is not controlling and is of limited instructive value here.

Nor is the court persuaded by Wayne State's argument that *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790 (9th Cir. 2011), compels the dismissal of InterVarsity's speech claims. While the Ninth Circuit saw "no material distinction between San Diego State's student organization program," which was not an all-comers policy, "and the student organization program discussed in [*Martinez*]," the policy in that case differs in key ways from the instant policy. There, San Diego State's written policy expressly prohibited "any student organization" from "restrict[ing] membership or eligibility to hold appointed or elected student officer positions in the campus-recognized chapter or group on the basis of race, sex, color, age, religion, [etc.] . . . except as explicitly exempted under federal law." *Reed*, 648 F.3d at 796. Here, as InterVarsity points out, Wayne State's policy "makes no mention of student organizations" and does not state any exceptions. (ECF No. 8, PageID.245.) And to the extent that Wayne State's student organization application refers to the nondiscrimination policy, it suggests that it applies only to restricting membership—not leadership.[3] Moreover, as the *Reed* dissent explained, while the Ninth Circuit's prior opinion in *Truth v. Kent Sch. Dist.*, 542 F.3d 634 (9th Cir. 2008), led it to extend *Martinez*, the "important issue of First Amendment jurisprudence, which the Supreme Court explicitly reserved in *Christian Legal Society v Martinez* . . . is still an open question at the national level." *Reed*, 648

---

3       The "Requirements for Membership" section of the application states: "Membership must be open to all currently registered WSU students (see Anti-Discrimination Policy.)" (ECF 6-1, PageID.122.) The "Officers" section does not cite the Anti-Discrimination Policy. It merely notes: "Only CURRENTLY enrolled Wayne State University students are eligible to be officers." (*Id.*)

F.3d at 805 (Ripple, J., dissenting). *Martinez* and *Reed* do not persuade the court to dismiss InterVarsity's speech counts for failure to state a claim.

Wayne State also argues that the speech claims fail because its policy is constitutional both on its face and as applied. (ECF No. 6, PageID.103–07.) It claims that InterVarsity "ha[s] not pleaded facts indicating that Wayne State instituted the non-discrimination policy 'for the purpose' of suppressing expression based on its viewpoint." (*Id.*, PageID.104.) Wayne State contends that the examples InterVarsity points to as establishing discriminatory application of the policy are inapposite. (*Id.*, PageID.105.)

InterVarsity responds by highlighting its allegations that Wayne State lacks a written nondiscrimination policy and applies its policy in a scattershot manner. Wayne State admits that it allows single-sex fraternities and sororities on campus and single-sex club sports teams. This appears to demonstrate the existence of unwritten exceptions to the policy. Moreover, many recognized student organizations at Wayne State hold themselves out on Wayne State's website as limiting membership based on the categories enumerated in the nondiscrimination policy. For example, Wayne State recognizes New Life Church, a church associated with the Southern Baptist Convention; the Ahmadiyya Muslim Students Association, which has the purpose of bringing together Ahmadi Muslim youth; Alpha Epsilon Pi, the Global Jewish Fraternity; the Albanian American Student Organization; Alpha Phi Alpha, a fraternity for African-Americans; Anakh Shreniyan Di, Michigan's all-girls competitive Bhangra dance team; the Association of Black Social Workers; and the Association of Latino Professionals for America. (ECF No. 1, PageID.19–21.)

17

Wayne State maintains that its single-sex sports teams, all-female floor in the dormitories, scholarships and engagement events targeting students by gender, veteran status, or other enumerated category are not similarly situated to the student organizations and discriminate on patently rational bases. (ECF No. 6, PageID.105–07.) Regarding the student organizations that describe themselves publicly as having a purpose related to or membership consisting of an enumerated category, Wayne State argues such descriptions "do not exclude the possibility that those clubs comply with the nondiscrimination policy" and do not "suggest[] that—if any of these organizations have in fact violated the policy—Wayne State knew about it and decided not to enforce its nondiscrimination policy, let alone for the purpose of suppressing InterVarsity's religious viewpoint." (ECF No. 9, PageID.273; ECF No. 6, PageID.106.)

Drawing reasonable inferences in favor of the non-movant, as required, and utilizing judicial experience and common sense, the court finds the factual allegations in the complaint sufficient to state a plausible claim for a free speech violation. "[A] government's action is viewpoint neutral when it treats everyone the same." *Hartman v. Thompson*, 931 F.3d 471, 480 (6th Cir. 2019). A reasonable inference from InterVarsity's factual allegations is that Wayne State was not treating it the same as everyone else. The court will therefore deny Wayne State's Motion to Dismiss with respect to InterVarsity's free speech claims.[4]

---

[4]    Wayne State relies on the same arguments for the claims under the parallel clauses of the Michigan Constitution, Counts 16–19. (ECF No. 6, PageID.107.) They are not analyzed separately since "[t]he rights of free speech under the Michigan and federal constitutions are coterminous." *In re Contempt of Dudzinski*, 667 N.W.2d 68 (Mich. Ct. App. 2003).Thus, they too survive the motion.

### 3. Remaining Claims

There are two remaining counts, one of which has been voluntarily dismissed.[5] That leaves Count 20, which alleges a procedural due process violation based on Wayne State not providing InterVarsity a hearing before denying its application. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Wayne State moves to dismiss this claim because there is no recognized liberty or property interest in being a recognized student organization. (ECF No. 6, PageID.112.) InterVarsity argues that because official recognition is important to associational rights, its denial requires at least an opportunity to be heard. (ECF No. 8, PageID.260.)

"A liberty interest," for which procedural due process is required, "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Under the First Amendment, "the ability of like-minded individuals to associate for the purpose of expressing commonly held views may not be curtailed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 309 (2012). Indeed, the "freedom to engage in association for the advancement of beliefs and ideas in an inseparable aspect of the 'liberty' assured by the Due Process Clause." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986) (citations omitted).

---

Additionally, since Wayne State makes no argument with regard to the Assembly Clause claim (Count 9), it will not be dismissed.

[5]     Count 11, which alleges a violation of the Higher Education Act, has been voluntarily dismissed with prejudice by stipulation of the parties. (ECF No. 25.)

Thus, insofar as InterVarsity invokes its right to expressive association, it has identified a cognizable liberty interest. *See Iota Xi Chapter of the Sigma Chi Fraternity v. Patterson*, 538 F. Supp. 2d 915, (E.D. Va. 2008). The complaint plausibly states a claim for a procedural due process violation.

### 4. Standing for InterVarsity/USA

Wayne State argues that InterVarsity/USA lacks standing to bring this suit because it has not suffered any injury. (ECF No. 6, PageID.114.) InterVarsity alleges that it has suffered an injury in that Wayne State has interfered with its mission and its religious and expressive association with the local chapter. (ECF No. 8, PageID.241.) Moreover, InterVarsity points out that only one plaintiff must have standing. *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 652 (6th Cir. 2007). Because the Wayne State Chapter of InterVarsity is a plaintiff in this case and has standing, the question of InterVarsity/USA's standing is superfluous. The court will not dismiss InterVarsity/USA for lack of standing.

### B. Motion for Partial Summary Judgment

InterVarsity moves for partial summary judgment on its Religion Clauses claims (Counts 1 and 2) and its First Amendment expressive association and viewpoint discrimination claims (Counts 6 and 9). Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The evidence, and

all reasonable inferences drawn from it, must be considered in the light most favorable

to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

While the complaint adequately alleges InterVarsity's claims so as to survive a

Rule 12(b)(6) motion, it is premature at this juncture to consider a motion for summary

judgment. There are genuine disputes of material fact regarding Wayne State's

knowledge and treatment of other student organizations. Accordingly, the court will deny

without prejudice this motion to allow the parties to engage in discovery and prepare the

case.

## IV. CONCLUSION

IT IS ORDERED that Defendants' Motion to Dismiss (ECF No. 6) is GRANTED

IN PART and DENIED IN PART. It is granted with respect to Counts 11, 12, and 14,

and it is denied with respect to the remaining counts.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment

(ECF No. 7) is DENIED WITHOUT PREJUDICE pending case preparation. The parties

are DIRECTED to meet and confer and jointly file a case management plan **by October**

**11, 2019.**

> s/Robert H. Cleland
> ROBERT H. CLELAND
> UNITED STATES DISTRICT JUDGE

Dated:  September 20, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 20, 2019, by electronic and/or ordinary mail.

> s/Lisa G. Wagner
> Case Manager and Deputy Clerk
> (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-10375.INTERVARSITY.Order.RMK.RHC.3